FILED

05/15/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 8, 2016

## WALTER LEE HICKS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County
No. 2015-CR-134    Forest A. Durard, Jr., Judge**

_____

### No. M2016-01050-CCA-R3-PC
_____

Petitioner, Walter Lee Hicks, was indicted for aggravated assault, evading arrest, reckless endangerment with a deadly weapon, driving on a revoked driver's license, speeding, and making a false report. Following a jury trial, Petitioner was convicted of the lesser-included offense of assault, evading arrest, reckless endangerment, driving on a revoked driver's license, speeding, and making a false report. The trial court imposed a 17-year sentence. A panel of this court affirmed Petitioner's convictions and sentence on direct appeal, but the panel remanded the case for entry of corrected judgments to reflect that the conviction for misdemeanor assault merged into the conviction for felony reckless endangerment. *State v. Walter Lee Hicks, Jr.*, No. M2013-01410-CCA-R3-CD, 2014 WL 2902277, at *1 (Tenn. Crim. App., June 26, 2014), *perm. app. denied* (Tenn., Oct. 22, 2014). Petitioner timely filed a petition for post-conviction relief. Following a hearing on the petition, the post-conviction court denied relief. On appeal, Petitioner alleges that he received ineffective assistance of counsel because trial counsel omitted portions of a state trooper's dash camera video when presenting that evidence at trial. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

M. Wesley, Hall IV, Jr., Unionville, Tennessee, for the appellant, Walter Lee Hicks.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Robert James Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Facts*

In its opinion on direct appeal, a panel of this court summarized the facts underlying Petitioner's convictions as follows:

Trooper John Judge is a Tennessee Highway Patrolman who was stationed in Marshall County at the time of the incident that gave rise to this appeal. On the evening of August 20, 2012, he was on duty with a radar gun on the southbound side of Highway 431. The posted speed limit at that location is 55 miles per hour. Sometime around 9:15 or 9:20 at night, the radar gun clocked an approaching car at 87 miles per hour. Trooper Judge activated the blue lights on his patrol car, and the speeding vehicle pulled over. When the blue lights came on, it automatically turned on the patrol car video camera.

The stopped vehicle was an orange Dodge Caliber with Florida plates. Trooper Judge observed two people in the car, both in the front seat. He exited the patrol car and approached the driver's side of the Dodge. He told the driver, [Petitioner], why he had stopped him. [Petitioner] said he was sorry. Trooper Judge then asked to see a driver's license. Petitioner said he had an Illinois license, but he was unable to produce it. Trooper Judge then asked [Petitioner] for his name and date of birth. [Petitioner] said his name was Stevie Hicks and he gave an inaccurate birth date. He was also asked for his social security number, but he said he didn't know it. Because [Petitioner] claimed the car was a rental, Trooper Judge asked him for the rental contract, but [Petitioner] was unable to produce it.

Trooper Judge then returned to his patrol car and tried to run the information [Petitioner] had given him, using his computer and radio. He was unable to find a drivers license for the name and date of birth he had been given. He returned to [Petitioner]'s car and asked him to step out. The ignition key remained in the ignition of the rental car. Trooper Judge instructed [Petitioner] to sit in the back seat of the patrol car while he tried once again to verify his identity. He tried several different spellings, and the dispatcher checked all fifty states, but they could not find a driver's license for Stevie Hicks.

Trooper Judge then opened the rear door of the patrol car and told [Petitioner] to step out because he was going to be arrested for driving without a license. After briefly searching [Petitioner] and finding and confiscating a box cutter, the trooper attempted to handcuff him. But [Petitioner] pulled away from his grasp and ran from the passenger side of the patrol car to the front of the rental car, where Trooper Judge briefly lost sight of him in the dark shadows.

Trooper Judge drew his gun and advanced towards the driver's side of the rental car, ordering [Petitioner] to show his hands and get down. But [Petitioner] instead popped up, turned the corner to the driver's side of the rental car and opened the door to get in. The trooper testified that as he held the weapon in his left hand, he used his right arm to try to pull [Petitioner] out of the car. But [Petitioner] somehow managed to get behind the wheel and start the car with the door still open and the trooper half in and half out of the car. At some point, the trooper switched his weapon from his left hand to his right hand. He said "[d]on't put that vehicle in drive and try to drive off and drag me, because I will shoot you." [Petitioner] turned around and said "shoot me," threw the car into drive and took off. Trooper Judge testified that the next thing he remembered was lying in the middle of the highway firing shots towards the fleeing car. He got up, ran back to his patrol car and gave chase while radioing dispatch. The chase went on for over fourteen miles at speeds that averaged 92 miles per hour and sometimes exceeded 100 miles per hour. [Petitioner]'s driving was erratic. He drove on the wrong side of the road for a significant amount of time. There were other vehicles on the highway, and at one point [Petitioner] came upon an oncoming vehicle while he was driving in the wrong lane, nearly causing a high-speed head-on collision. About a mile from the Fayetteville city limits, the road was blocked by line of patrol cars with their blue lights flashing. [Petitioner] stopped his car and was ordered to step out. He crawled out of his car, covered in blood, and was taken into custody. The proof showed that he had been shot in the left arm.

*State v. Walter Lee Hicks, Jr.*, No. M2013-01410-CCA-R3-CD, 2014 WL 2902277, at *1-2 (Tenn. Crim. App., June 26, 2014), *perm. app. denied* (Tenn., Oct. 22, 2014).

### Post-conviction hearing

Trial counsel acknowledged that the dash cam video was not played in its entirety at trial. Counsel testified,

We played everything that was relevant, which was from the time that he was pulled over for the traffic offense, up until the point where [Petitioner] was driving in to almost the Fayetteville city limits.

And a few hundred yards from where the Fayetteville city police set up the road block, [Petitioner] stopped, gets out of the car and is arrested.

That's where we had an agreement with the State to cut it off, because everything after that was essentially the police officers talking to the trooper. It was all hearsay. And the trooper was basically recounting his side of things.

Counsel testified that he viewed the video "numerous times." He and co-counsel made a tactical decision because the portion of the video that was omitted contained "the trooper's side of things[.]" Counsel testified that he believed a better strategy was to thoroughly cross-examine Trooper Judge. The omitted portion of the video showed Trooper Judge telling other officers that he had been dragged and showing the officers his injuries and torn uniform. Counsel believed that if the jury heard Trooper Judge's excited description of the incident in the video, it would be more likely to convict Petitioner of aggravated assault. Counsel replayed a portion of the video that was admitted into evidence at the trial during his cross-examination of Trooper Judge "to show that it wasn't a situation of the trooper actually being dragged. It looked more like he had stumbled and fallen down[.]" Counsel believed his strategy was successful because Petitioner was convicted of a lesser-included offense of the charged offense of aggravated assault. Counsel testified that he discussed the video with Petitioner but that he could not recall whether Petitioner agreed with the decision not to play the entire video.

Petitioner's co-counsel testified that he agreed with trial counsel's assessment of why the video was not played in its entirety. He testified that he and trial counsel "had several discussions with [Petitioner] about the playing of the entire video." He testified that Petitioner agreed that the decision to stop the video before Trooper Judge began to recount his version of events.

Petitioner testified that his attorneys never discussed the decision not to play the entire video with him. He testified that he asked "constantly" to view the video, but counsel did not discuss trial strategy regarding the video. Petitioner testified that he expressed his desire to play the entire video "[f]rom the get."

- 4 -

*Analysis*

Petitioner contends that his trial counsel were ineffective because they failed to play the video from Trooper Judge's dash camera in its entirety. The State responds that trial counsel made an informed strategic decision not to play the entire video and that Petitioner has failed to demonstrate that the outcome of his trial would have changed had the video been played in its entirety. We agree with the State.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the [c]onstitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger*, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort

be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W. 2d 4, 9 (Tenn. 1982).

Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

In its order denying relief, the post-conviction court found that the excluded portion of the video showed officers "milling about attending to their duties, interviewing of Judge and attending to his injuries, a call to Judge from his spouse to tell her he was fine, a call from Judge's sergeant about the events, a search of the Petitioner's vehicle and other general chatter about the events among the various persons on scene, none of which included the Petitioner." The post-conviction court stated that it "agree[d] with counsel that the playing of the post[-]arrest video would only serve to reiterate the events in front of the jury and would serve to hurt the Petitioner." The court found that "[t]he proof [at trial] was absolutely overwhelming against the Petitioner." The court concluded that "[t]here is nothing to suggest whatsoever" that counsel's performance was deficient or that Petitioner suffered prejudice as a result of trial counsel's strategic decision not to play the post-arrest video.

Petitioner has failed to show that the record preponderates against the post-conviction court's findings. In fact, in his brief on appeal, Petitioner fails to even accurately state his claim. In the one paragraph in which Petitioner argues trial counsel's alleged deficiencies, he erroneously asserts as follows:

> Petitioner contends that trial counsel was ineffective in not properly advising him about the law, with regard to his entering a plea of guilty. Petitioner contends his right to assistance of counsel applies not only during trial, but also when the defendant is advised to plead guilty and that the competency of counsel should be subject to review in both instances. Petitioner contends counsel did not advise him as to what the law was regarding his sentence pleading and the possible ranges of punishment which he faced.

Additionally, Petitioner fails to set forth in his brief on appeal any facts from the post-conviction hearing. Despite the fact that Petitioner's inadequate brief on appeal results in waiver of his issues, we conclude on the merits that the record supports the post-conviction court's findings and conclusions. *See* Tenn. Ct. Crim. App. R. 10(b). Accordingly, the Petitioner is not entitled to relief.

CONCLUSION

Based upon consideration of the foregoing and the record as a whole, the post-conviction court's denial of the petition for post-conviction relief is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE